IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

-------------------------------------------------------------x
                                          :

FIELDTURF USA INC., FIELDTURF INC.,   :
and FIELDTURF TARKETT SAS,             :
                                          :   Docket No. 4:11-CV-050-TWT
               Plaintiffs,            :
                                          :   **REDACTED PURSUANT TO**
     - against -                  :   **CONFIDENTIALITY ORDER**
                                          :
TENCATE THIOLON MIDDLE EAST, LLC  :
f/k/a MATTEX LEISURE INDUSTRIES,    :
POLYLOOM CORPORATION OF AMERICA :
d/b/a/ TENCATE GRASS NORTH AMERICA, :
and TENCATE THIOLON B.V.,               :
                                          :
               Defendants.           :
-------------------------------------------------------------x

**DECLARATION OF PEARLINE M. KYI
IN SUPPORT OF PLAINTIFFS' MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS
AND FOR OTHER RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Pearline M. Kyi, hereby declare as follows:

1. I am an attorney licensed to practice law in the State of New York, and I have been admitted *pro hac vice* in the Northern District of Georgia in connection with this action. I am associated with the firm of Friedman Kaplan

Seiler & Adelman LLP, counsel for plaintiffs FieldTurf USA Inc., FieldTurf Inc., and FieldTurf Tarkett SAS (collectively "FieldTurf"), and submit this declaration in support of Plaintiffs' Motion to Compel the Production of Documents and For Other Relief.

2. As explained below and in the motion submitted herewith, the parties have been unable to reach agreement on the timeline for the production of critical documents and the use by Defendants of the "Highly Confidential" designation in their document productions.

3. The discovery period in this case commenced on September 22, 2011. On that date, FieldTurf served Defendants with interrogatories and requests for the production of documents. Attached hereto as **Exhibit A** is a true and correct copy of Plaintiffs' First Set of Requests for Production of Documents.

4. On September 30, 2011, Jessica Burtnett, counsel for Defendants, proposed that the parties agree to a 30-day extension of the deadlines for the parties' submission of written responses to interrogatories and document requests. My colleague, Amy Brown, responded that, in light of the volume of documents to be produced, FieldTurf would agree to extend the deadlines for both parties' document productions to 60 days after service of the document requests, provided that the parties worked in good faith to make timely and rolling

productions. Ms. Brown stated, however, that FieldTurf did not believe an extension of the deadlines for responses to interrogatories and document requests was warranted, as it would be important for the parties to resolve, as soon as possible, any issues with objections to the interrogatories and document requests. Attached hereto as **Exhibit B** is a true and correct copy of the September 30 and October 3, 2011 email exchange between Ms. Burtnett and Ms. Brown.

     5.    On October 25, 2011—the day that Defendants' written responses to FieldTurf's interrogatories and document requests were due—Thomas Pender, counsel for Defendants, again requested a 30-day extension of the deadline. My colleague, Katherine Pringle, offered to provide Defendants with a 15-day extension, provided that they agreed to make best efforts to complete all document production within 60 days of service of FieldTurf's document requests. Mr. Pender rejected that proposal and stated that Defendants would continue to work on providing FieldTurf with responses to its interrogatories and document requests. Mr. Pender further stated that Defendants "cannot give a firm date for 'substantial compliance' or a date for completion [of Defendants' document production and written responses to FieldTurf's document requests]." Defendants did not serve their written responses and objections until November 11, 2011. Attached hereto as **Exhibit C** is a true and correct copy of the October 25 and 26,

2011 email exchange between Ms. Pringle and Mr. Pender. Attached hereto as **Exhibit D** is a true and correct copy of Defendants' Responses and Objections to Plaintiffs' First Requests for Production.

6. During a telephone conference on November 1, 2011, counsel for Defendants informed my colleagues, Katherine Pringle and Reid Skibell, that Defendants were in the preliminary stages of collecting documents from individuals located in the United States, and that they had not begun collecting documents from individuals located in the United Arab Emirates and Netherlands. Defendants' counsel further informed Ms. Pringle and Mr. Skibell that Defendants would use what amounted to five search terms to search for documents responsive to FieldTurf's document requests. Because the omission of many important search terms would have excluded from collection many essential documents, FieldTurf proposed a set of search terms for Defendants to use in searching and collecting documents. Attached hereto as **Exhibit E** is a true and correct copy of a November 3, 2011 letter from Mr. Skibell to counsel for Defendants.

7. On November 10, 2011, Mr. Skibell proposed that the parties reach an agreement to set interim dates for the completion of document discovery, depositions, and expert discovery. Attached hereto as **Exhibit F** is a true and

correct copy of a November 10, 2011 email from Mr. Skibell to Mr. Pender, with an attached proposed order.

8. Mr. Skibell's November 10 proposal was discussed during a November 16, 2011 telephone conference between counsel for FieldTurf and Defendants. At that conference, Mr. Pender stated that Defendants would not agree to any interim dates for document discovery, depositions, or expert discovery. When asked whether Defendants had a counter-proposal, Mr. Pender responded that they did not.

9. In the fall of 2011, the parties could not agree on the content of a confidentiality agreement. FieldTurf filed a Motion for a Confidentiality Order on November 8, 2011. On November 23, 2011, Defendants filed a Motion for a Protective Order. In support of that motion, Defendants attached the Certification of Mario Muehle, dated November 22, 2011. Attached hereto as **Exhibit G** is a true and correct copy of the Certification of Mario Muehle.

10. During the pendency of the Court's resolution of the parties' motions for confidentiality order, FieldTurf produced 198,420 pages of documents, including ones designated "Highly Confidential." Defendants had, by that time, produced 1,680 pages of documents, and stated that they would not produce any "Highly Confidential" documents until the Court's entry of a final confidentiality

order. Attached hereto as **Exhibits H and I** are true and correct copies of letters dated December 12, 2011, and December 29, 2011, respectively, from Defendants' counsel.

      11.    In the weeks leading up to the Court's January 9, 2012 hearing on the parties' motions for confidentiality order, Defendants' counsel represented, in letters and emails to my colleagues, that approximately 16,000 "Highly Confidential" documents would be produced upon the Court's resolution of the motions. Jessica Burtnett, counsel for Defendants, made the same representation during a January 4, 2012 telephone conference between counsel for the parties. Attached hereto as **Exhibit J** is a true and correct copy of a December 21, 2011 email exchange between Mr. Skibell and Ms. Burtnett.

      12.    On January 16, after the Court denied Defendants' requested order, Defendants produced 10,701 "Highly Confidential" documents. When my colleague, Bruce Kaplan, inquired as to why 10,701 had been produced, rather than the promised 16,000 documents, Ms. Burtnett explained that Defendants had conducted a final review and reduced the number of produced documents "due to lack of responsiveness and privilege." Attached hereto as **Exhibit K** is a true and correct copy of a January 17 and 19, 2012 email exchange between Mr. Kaplan and Ms. Burtnett.

13. Since producing the 10,701 "Highly Confidential" documents on January 16, 2012, Defendants have produced an additional 4,113 documents. Nearly all, if not all, of those documents have been marked "Highly Confidential."

14. Under paragraph 5 of the Confidentiality Order, material may be designated "Highly Confidential" if the producing party "believes in good faith [that it] contain[s] a trade secret or sensitive or proprietary commercial, financial business or personal information with substantial ongoing commercial or competitive significance." Attached hereto as **Exhibit L** is a true and correct copy of the January 9, 2012 Confidentiality Order governing this litigation.

15. In reviewing Defendants' document production, my colleagues and I have come across many examples of "Highly Confidential" documents that, in our view, do not merit "Highly Confidential" protection. Attached hereto as **Exhibit M** is a true and correct copy of ███████████████████████████████████████████. Attached hereto as **Exhibit N** is a true and correct copy of ███████████████████████████████████████████. Attached hereto as **Exhibits O, P, Q, and R** are true and correct copies of ███████████████████████████████████████████, respectively, ███████████████████████████████████████████.

16.     Defendants have marked the bulk of the 15,558 documents they have produced to date "Highly Confidential," and all or nearly all of the 14,814 documents produced in their last three productions have been marked "Highly Confidential."

17.     On March 2, 2012, I emailed counsel for Defendants regarding their use of the "Highly Confidential" designation, citing examples of what my colleagues and I believed to be documents improperly designated "Highly Confidential." Counsel for Defendants, John Hock, responded that Defendants would review the examples listed in my email "at [their] next convenience." During a telephone conference on March 14, Mr. Hock stated that Defendants were still reviewing the example documents cited in my March 2 email. When my colleague, Reid Skibell, argued that Defendants have over-designated the bulk of their productions "Highly Confidential," Mr. Pender acknowledged that many documents in Defendants' January 16 production of "Highly Confidential" documents were in fact not entitled to this heightened level of confidentiality protection, but were nevertheless produced with that confidentiality designation in order to speed up the production of documents. Mr. Skibell then requested that Defendants review their productions and re-designate improperly-marked documents. Mr. Pender refused to do so. Attached hereto as **Exhibit S** is a true

and correct copy of the March 2 and 4, 2012 email exchange between myself and Mr. Hock.

18.     On March 7, 2012, Defendants produced 735 documents from their U.A.E. and Netherlands employees. With the exception of documents collected from the laptop of Jeroen van Balen, Mattex's former Managing Director, this was the first production of documents from Defendants' foreign custodians.

19.     Defendants' March 7 production of documents from the U.A.E. and Netherlands contains redactions, in which the names and email addresses of certain individuals have been redacted. In a letter dated March 9, 2012, my colleague, Reid Skibell, raised with Defendants' counsel FieldTurf's concerns regarding the manner in which Defendants had redacted information. During a telephone conference on March 14, counsel for Defendants, John Hock, acknowledged the problems with Defendants' redactions, but declined to review the 735 documents in Defendants' last production to identify and correct any improper redactions. Mr. Hock stated that Defendants would limit their review to those documents cited in Mr. Skibell's letter as examples of documents that had been inappropriately redacted. Attached hereto as **Exhibit T** is a true and correct copy of Mr. Skibell's March 9, 2012 letter to Mr. Pender.

20. Nearly all of the documents Defendants have produced to date come from their U.S.-based employees. Documents reviewed to date reveal that individuals employed by Defendants in the U.A.E. and Netherlands played an important role in the issues underlying this litigation. Attached hereto as **Exhibit U** is a true and correct copy of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Attached hereto as **Exhibit V** is a true and correct copy of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Attached hereto as **Exhibit W** is a true and correct copy of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Attached hereto as **Exhibit X** is a true and correct copy of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Attached hereto as **Exhibit Y** is a true and correct copy of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

21. Depositions of Marco Reefman, Marc Verleyen, Tom Algoet, and Mario Muehle are scheduled in Dubai for the week of April 23, 2012. Each of

these individuals was identified in Defendants' Rule 26(a)(1) Initial Disclosures as persons likely to have discoverable information. Jaap Lock also was identified in Defendants' Initial Disclosures as another person likely to have discoverable information. Attached hereto as **Exhibit Z** is a true and correct copy of Defendants' Rule 26(a)(1) Initial Disclosures.

22. ███████████████████████████████████ emails within FieldTurf's possession, reveal that Inge Huiskes, the assistant to Royal TenCate N.V.'s CEO, Loek de Vries, regularly sent and received emails on de Vries' behalf. Attached hereto as **Exhibit AA** is a true and correct copy of ██████████████████████████████████████████████. Attached hereto as **Exhibit BB** is a true and correct copy of ██████████████████████████. Attached hereto as **Exhibit CC** is a true and correct copy of ██████████████████████████████████████████████.

23. Over the past few months, attorneys from my firm have requested that Defendants produce documents from the "Mattex data room." Attached hereto as **Exhibit DD** is a true and correct copy of ████████

11

███████████████████████████████████

███████████████████████

24. During a November 16, 2011 telephone conference, my colleague, Reid Skibell, asked whether Defendants had been able to locate documents from the Mattex data room. Jessica Burnett, counsel for Defendants, responded in the affirmative. On March 14, 2012, Mr. Skibell again asked about the Mattex data room documents, and was informed by Mr. Pender that he believed the documents no longer exist. Mr. Pender stated that he would need to confirm this was so, and would inform FieldTurf of his findings "in the next few weeks."

Dated:    New York, New York
          March 16, 2012

_____
*Pearline M. Kyi*