# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

```
-----------------------------------------------------------x
                                            :
FIELDTURF USA INC., FIELDTURF               :
INC., and FIELDTURF TARKETT SAS,            :
                                            :
                        Plaintiffs,  :    Docket No. 4:11-CV-050-TWT
                                            :
          - against -                       :    PLAINTIFFS' FIRST SET OF
                                            :    REQUESTS FOR PRODUCTION
TENCATE THIOLON MIDDLE EAST,                :    OF DOCUMENTS
LLC f/k/a MATTEX LEISURE                     :
INDUSTRIES, POLYLOOM                         :
CORPORATION OF AMERICA d/b/a/               :
TENCATE GRASS NORTH AMERICA,                :
and TENCATE THIOLON B.V.,                    :
                                            :
          Defendants.                       :
-----------------------------------------------------------x
```

Pursuant to Rules 26 and 34 of the Federal Rules of Civil

Procedure, plaintiffs request that defendants produce for inspection and

copying, in accordance with the instructions set forth below, the documents

described herein at the offices of Nations, Toman & McKnight LLP, Suite

2050, Promenade II, 1230 Peachtree St., N.E., Atlanta, Georgia 30309,

within thirty (30) days of the service hereof, or by such other date as may be

agreed to by the parties.

## DEFINITIONS AND INSTRUCTIONS

1.     The term "Mattex" means Mattex Leisure Industries, and its successors (including TenCate Middle East), predecessors, parents, direct and indirect subsidiaries, affiliates, segments, divisions, and its current or former directors, officers, employees, representatives, agents, consultants, advisors, attorneys, and any other person acting on its behalf.

2.     The term "TenCate Middle East" means defendant TenCate Thiolon Middle East, LLC f/k/a Mattex Leisure Industries, and its successors, predecessors (including Mattex), direct and indirect subsidiaries, segments, divisions, and its current or former directors, officers, employees, representatives, agents, consultants, lobbyists, advisors, attorneys, and any other person acting on its behalf.

3.     The term "TenCate" means defendants TenCate Middle East, Polyloom Corporation of America d/b/a TenCate Grass North America, TenCate Thiolon B.V., and their successors, predecessors (including Mattex), parents, direct and indirect subsidiaries, affiliates, segments, divisions, and their current or former directors, officers, employees, representatives, agents, consultants, advisors, attorneys, and any other person acting on their behalf.

2

4. The term "FieldTurf" means plaintiffs FieldTurf USA Inc., FieldTurf Inc., FieldTurf Tarkett SAS, and their successors, predecessors, parents, direct and indirect subsidiaries, affiliates, segments, divisions, and their current or former directors, officers, employees, representatives, agents, consultants, advisors, attorneys, and any other person acting on their behalf.

5. The term "ISA Sport" means ISA Sport and its successors, predecessors, parents, direct and indirect subsidiaries, affiliates, segments, divisions, and its current or former directors, officers, employees, representatives, agents, consultants, advisors, attorneys, and any other person acting on its behalf.

6. The term "Reimotec" means Reimotec GmbH and its successors, predecessors, parents, direct and indirect subsidiaries, affiliates, segments, divisions, and its current or former directors, officers, employees, representatives, agents, consultants, advisors, attorneys, and any other person acting on its behalf.

7. The term "Counterclaim" means the Counterclaim filed by defendants in this action on August 23, 2011.

3

8. The term "Revolution" means the monofilament fiber currently being manufactured and sold by FieldTurf.

9. The term "Evolution" means the monofilament fiber Evolution 3GS, and any colors or prior versions thereof.

10. "Evolution Plus" means the monofilament fiber developed as a successor to Evolution 3GS, and any colors or versions thereof.

11. The term "Evolution Marks" shall have the meaning ascribed to it in the Counterclaim.

12. The term "2008 Supply Agreement" shall have the meaning ascribed to it in the Counterclaim.

13. The term "communication" means any form of oral or written interchange, whether in person, by telephone, facsimile, electronic mail, instant message, text message, Bloomberg, voicemail, or any other medium.

14. The term "concerning" means relating to, consisting of, referring to, regarding, reflecting, constituting, mentioning, interpreting,

supporting, refuting, or having any logical or factual connection with the matter discussed.

15.    The term "document" has the broadest meaning possible, and includes, without limitation, any recording in any tangible form of any information (including electronic files, text messages, instant messages, and email), whether handwritten, typed, printed, stored on computer disks, tapes, databases, servers, cellular phones, personal digital assistants, or otherwise reproduced. "Document" also includes all drafts and copies that are not identical to the original, whether or not sent or received, and any underlying supporting or preparatory materials.

16.    Documents shall be produced in the form of single-page TIFF images, together with load files. The load files shall identify the custodian or other source (*e.g.*, a departmental file or a network drive shared by a group of users) of each document. All Excel (or other electronic spreadsheet) files, PowerPoint (or other electronic slideshow files) files, and photographic files, including any such files attached to emails, shall be produced in their native format. FieldTurf reserves the right to request production in native format of any other documents produced in response to this request.

17.    In construing each request: (a) the singular shall include the plural and the plural shall include the singular; (b) the conjunctions "and" or "or" shall be read either disjunctively or conjunctively so as to bring within the scope of the request all information that might otherwise be construed to be outside its scope; (c) "any" shall include, without limitation, "each and every;" and (d) "including" means "including but not limited to."

18.    If TenCate asserts that any document requested is immune from disclosure (in whole or in part) under any claim of privilege or immunity, it shall submit a log listing each document withheld that: (a) identifies the person(s) who prepared or authored the document and all recipients or addressees, including recipients of copies; (b) specifies the date on which the document was prepared; (c) describes the type of document (*e.g.*, letter, memorandum, notes, email, etc.); (d) identifies the general subject matter of the document; and (e) sets forth the nature or the basis for the claim of privilege or immunity asserted.

19.    In responding to each request, every source of documents to which TenCate has access should be consulted, regardless of whether the source is within TenCate's immediate possession, custody or control, or is located in the United States or abroad. All documents in the possession,

6

custody or control of your counsel, agents, advisors, experts, or consultants must be consulted.

20.    If any document has been lost, discarded or destroyed, each document so lost, discarded or destroyed shall be identified as completely as possible. Identification of such documents shall include, without limitation, the information required of privileged or redacted documents, as well as the date of disposal and person(s) disposing of the document. If no documents exist that are responsive to a particular request, so state in writing.

21.    Unless a different timeframe is specified in a particular request, these requests seek documents and communications created, modified, received, or sent during the period from November 1, 2003 through the present.

22.    If, in responding to any of these document requests, you encounter any ambiguity in construing either the request or a definition or instruction relevant to it, TenCate shall set forth the matter or term deemed ambiguous and the construction selected or used in responding to the request.

23.     This is a continuing request for production of documents. If additional documents are received or discovered after the initial production, all such further documents should be produced as they are received.

## DOCUMENT REQUESTS

1.     All product specifications for the Evolution fiber supplied to FieldTurf by either Mattex or TenCate.

2.     Documents sufficient to reflect the chemical composition of the Evolution fiber supplied to FieldTurf by either Mattex or TenCate, including but not limited to those documents sufficient to reflect the: (a) polyethylene polymer; (b) Masterbatch; (c) ultraviolet stabilizer(s); (d) antioxidant stabilizer(s); and (e) colorants used to manufacture Evolution fiber.

3.     Documents sufficient to reflect the chemical composition of any Evolution product samples supplied to FieldTurf by either Mattex or TenCate, including but not limited to those documents sufficient to reflect the (a) polyethylene polymer; (b) Masterbatch; (c) ultraviolet stabilizer(s); (d) antioxidant stabilizer(s); and (e) colorants used to manufacture such samples.

4.    All documents and communications concerning any changes made to the chemical composition of the Evolution fiber supplied to FieldTurf by either Mattex or TenCate, including but not limited to all documents concerning changes to the (a) polyethylene polymer; (b) Masterbatch; (c) ultraviolet stabilizer(s); (d) antioxidant stabilizer(s); or (e) colorants used to manufacture Evolution fiber.

5.    Documents sufficient to reflect the manufacturing process for Evolution fiber, including but not limited to documents reflecting the (a) the production and extrusion machinery; (b) production and extrusion settings (including but not limited to zone settings, throughput rate and take-up rate); (c) Masterbatching process; and (d) annealing process used to manufacture Evolution fiber.

6.    All documents and communications concerning any changes to the manufacturing process for Evolution fiber, including but not limited to changes made to the: (a) production and extrusion machinery; (b) production and extrusion settings (including but not limited to zone settings, throughput rate and take-up rate); (c) Masterbatching process or (d) annealing process used to manufacture Evolution fiber.

9

7.     All documents reflecting communications between FieldTurf, on the one hand, and Mattex or TenCate, on the other hand, concerning the chemical composition of Evolution fiber, including but not limited to communications concerning any changes made to the: (a) polyethylene polymer; (b) Masterbatch; (c) ultraviolet stabilizer(s); (d) antioxidant stabilizer(s); and (e) colorants used to manufacture Evolution fiber.

8.     All documents reflecting communications between FieldTurf, on the one hand, and Mattex or TenCate, on the other hand, concerning the manufacturing process for Evolution fiber, including but not limited to communications concerning any changes made to the: (a) production and extrusion machinery; (b) production and extrusion settings (including but not limited to zone settings, throughput rate and take-up rate); (c) Masterbatching process; or (d) annealing process used to manufacture Evolution fiber.

9.     All documents reflecting communications between Mattex, on the one hand, and TenCate, on the other hand concerning Evolution fiber, including copies of all documents exchanged between Mattex and TenCate concerning Evolution.

10

10.    All documents reflecting communications between Mattex, on the one hand, and TenCate, on the other hand, concerning FieldTurf.

11.    A copy of each supply contract or agreement, and any amendments thereto, entered into between Mattex or TenCate, on the one hand, and any supplier of the chemical components of Evolution fiber, on the other hand.

12.    Documents sufficient to reflect the quality control processes or procedures implemented by Mattex or TenCate in connection with the manufacturing of Evolution fiber.

13.    All documents and communications concerning any changes to, or deficiencies in, the quality control processes or procedures implemented by Mattex or TenCate in connection with the manufacturing of Evolution fiber.

14.    Documents sufficient to reflect any differences in the chemical composition of the Evolution fiber manufactured in the United Arab Emirates versus the Evolution fiber manufactured in the United States.

11

15.    Documents sufficient to reflect any differences in the manufacturing process for the Evolution fiber manufactured in the United Arab Emirates versus the Evolution fiber manufactured in the United States.

16.    All documents and communications concerning any differences in the quality or performance of the Evolution fiber manufactured in the United Arab Emirates versus the Evolution fiber manufactured in the United States.

17.    Documents sufficient to reflect any differences in the chemical composition of the various colors of Evolution fiber supplied to FieldTurf by either Mattex or TenCate.

18.    Documents sufficient to reflect any differences in the manufacturing processes for the various colors of Evolution fiber supplied to FieldTurf by either Mattex or TenCate.

19.    All documents and communications concerning any differences in the quality or performance of the various colors of Evolution fiber supplied to FieldTurf by Mattex or TenCate.

20.    All documents and communications concerning any tests performed by Mattex or TenCate on Evolution fiber, including but not limited to the results of any tests designed to evaluate the durability,

12

wearability, resilience, tenacity, ultraviolet stability, weathering performance, thermal stability, shrinkage, or color fastness of Evolution fiber.

21.    All documents and communications concerning tests performed on Evolution fiber by any third party, including Reimotec or ISA Sport.

22.    All documents and communications concerning any deficiencies, problems, flaws or other shortcomings observed in the performance of the Evolution fiber, including any deficiencies in the durability, wearability, resilience, tenacity, ultraviolet stability, weathering performance, thermal stability, shrinkage, or color fastness of the Evolution fiber.

23.    All documents concerning any communications between FieldTurf, on the one hand, and Mattex, on the other hand, during the 2003 European Turf Show held in Cologne, Germany, including all documents concerning any Evolution product samples, promotional materials or other information provided by Mattex to FieldTurf.

24.    All documents and communications concerning any contract or agreement, or any amendments thereto, entered into between

Mattex or TenCate, on the one hand, and FieldTurf, on the other hand, for the supply of Evolution fiber.

     25.    All documents and communications concerning any warranty extended by either Mattex or TenCate, on the one hand, to FieldTurf, on the other hand, in connection with the supply of Evolution fiber.

     26.    All documents and communications concerning the performance of Evolution under the terms of any warranty extended to FieldTurf by either Mattex or TenCate, including all documents relating to Evolution's fibrillation, breakage, degradation, streaking or other failure to perform as warranted.

     27.    All documents and communications concerning any analysis, discussion or other consideration of the causes for any actual or claimed deficiencies, problems, flaws or other shortcomings observed in the performance of the Evolution fiber, including any deficiencies in the durability, wearability, resilience, tenacity, ultraviolet stability, weathering performance, thermal stability, shrinkage, or color fastness of the Evolution fiber.

28.     All documents and communications concerning
TenCate's physical inspection of any artificial turf field manufactured with
Evolution fiber, including copies of all notes, reports, photographs or other
records of such inspections.

29.     Documents sufficient to reflect any differences in the
chemical composition and/or processes used to manufacture Evolution Plus
versus Evolution.

30.     All documents and communications concerning the
actual or intended performance of Evolution Plus as compared to Evolution.

31.     All documents reflecting communications between
Mattex, on the one hand, and TenCate on the other hand, concerning the
supply of Evolution fiber to FieldTurf, including but not limited to any
communications concerning TenCate Middle East's assumption of liability
for any claims arising out of or in any way related to the supply of Evolution
fiber to FieldTurf.

32.     All documents and communications concerning the
liabilities of Mattex that were acquired by or assigned to TenCate Middle
East.

15

33.     All documents and communications concerning TenCate's termination of the 2008 Supply Agreement.

34.     Documents sufficient to show TenCate's pricing for its Tapeslide, Monoslide, Oasis, Mastergreen, and fiber backing products for customers other than FieldTurf during the period February 1, 2011 through and including April 30, 2011.

35.     Documents sufficient to reflect the total dollar value of sales that Mattex made within the State of Georgia during the years 2004 through 2007.

36.     Documents sufficient to reflect the total dollar value of sales that TenCate Middle East made within the State of Georgia during the years 2004 through 2008.

37.     All documents concerning contacts, whether in person or by telephonic or electronic means, between Mattex or TenCate Middle East representatives, on the one hand, and FieldTurf representatives located within the State of Georgia, on the other hand, during the years 2004 through 2008.

38.     All documents concerning contacts, whether in person or by telephonic or electronic means, between Mattex or TenCate Middle East

representatives, on the one hand, and customers other than FieldTurf, on the other hand, within the State of Georgia during the years 2004 through 2008.

39.     Copies of the Evolution trademark registrations referenced in paragraph 22 of the Counterclaim.

40.     All documents concerning the promotion or advertising of products bearing the Evolution Marks to customers other than FieldTurf, including all documents reflecting the "substantial advertising and promotion" of the Evolution Marks, as referenced in paragraph 23 of the Counterclaim.

41.     For the period July 1, 2008 through the present, documents sufficient to identify: (a) all customers other than FieldTurf to which products bearing the Evolution Marks were marketed; and (b) to the extent that any such customer purchased products bearing the Evolution Marks, the dollar value of each such sale.

42.     Documents sufficient to reflect the total dollar value of products bearing the Evolution Marks that were sold to customers other than FieldTurf during the periods July 1, 2008 through the present.

43.     All documents concerning FieldTurf's development, marketing or sale of Revolution, including all documents reflecting

communications between TenCate, on the one hand, and any third party, on the other hand, concerning Revolution.

44.    All documents concerning any disparaging oral or written statements made by FieldTurf relating to TenCate or TenCate's products, including all documents relating to the allegedly disparaging statements set forth in paragraphs 58 through 61 of the Counterclaim.

45.    All documents concerning TenCate's withdrawal, revocation or other modification of the warranties offered on any of its products during the period January 1, 2011 through the present.

46.    All documents concerning any existing or prospective business opportunities that TenCate lost as a result of any disparaging oral or written statements made by FieldTurf relating to TenCate or TenCate's products, including all documents reflecting opportunities that were lost as a result of the allegedly disparaging statements set forth in paragraphs 58 through 61 of the Counterclaim.

47.    All documents concerning the alleged conspiratorial agreement between the FieldTurf entities "or with others acting in concert with or otherwise aiding and abetting them" to disparage or defame TenCate, as referenced in paragraph 124 of the Counterclaim, including all

18

documents reflecting the precise parties to the agreement and the time and place of its consummation.

48.     All documents concerning or supporting the allegation that FieldTurf "has engaged and continues to engage in widespread and similar conspiratorial activities directed at and intended to harm others in the synthetic turf industry," as set forth in paragraph 125 of the Counterclaim.

49.     All documents concerning or supporting the allegation in paragraph 62 of the Counterclaim that "TenCate believes that its claim for damages against FieldTurf in this case exceeds $100 million."

50.     One copy of each insurance policy on which TenCate could rely to satisfy all or part of any judgment in this action.

51.     All documents relied upon or consulted in responding to plaintiffs' First Set of Interrogatories, dated September 22, 2011.

Dated:     September 22, 2011
           Atlanta, Georgia


                              NATIONS, TOMAN & MCKNIGHT LLP


                              Charles K. McKnight, Jr.
                              Georgia Bar No. 495810
                              Gary J. Toman
                              Georgia Bar No. 714651
                              1230 Peachtree Street, NE, Suite 2050

19

Atlanta, Georgia 30309
(404) 266-2366
cmcknight@ntmlaw.com
gtoman@ntmlaw.com

-and-

FRIEDMAN KAPLAN SEILER &
   ADELMAN LLP
Bruce S. Kaplan
Amy C. Brown
Lindsey R. Skibell
7 Times Square
New York, N. Y. 10036
(212) 833-1100

*Attorneys for Plaintiffs*

20

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

-------------------------------------------------------x

FIELDTURF USA INC., FIELDTURF INC.,  :
and FIELDTURF TARKETT SAS,           :
                                     :
                Plaintiffs,          :
                                     :   CIVIL ACTION
                - against -          :
                                     :   FILE NO. 4:11-cv-50-TWT
TENCATE THIOLON MIDDLE EAST, LLC     :
f/k/a MATTEX LEISURE INDUSTRIES,     :
POLYLOOM CORPORATION OF AMERICA :
d/b/a/ TENCATE GRASS NORTH AMERICA, :
and TENCATE THIOLON B.V.,            :
                                     :
                Defendants.          :

-------------------------------------------------------x

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 22nd day of September, 2011

caused a true and correct copy of the foregoing Plaintiff's First Set of

Requests for Production of Documents to be served by e-mail and by U.S.

mail upon:

    James F. Bogan III
    KILPATRICK TOWNSEND
    Suite 2800
    1100 Peachtree Street
    Atlanta, GA 30309-4528

(404) 815-6467
Fax (404) 541-3133
jbogan@kilpatricktownsend.com

William Cremer
Thomas R. Pender
CREMER, SPINA, SHAUGHNESSY, JANSEN &
SIEGERT, LLC
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 726-3800

*Attorneys for Defendants*

NATIONS, TOMAN & MCKNIGHT LLP

/S/ Charles K. McKnight, Jr.
    Charles K. McKnight, Jr.