IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

---------------------------------------------------------------x
FIELDTURF USA INC., FIELDTURF INC., :
and FIELDTURF TARKETT SAS, :
    :
                    Plaintiffs, :
    :
            – against – :   CIVIL ACTION
    :
TENCATE THIOLON MIDDLE EAST, LLC :   FILE NO. 4:11-cv-50-TWT
f/k/a MATTEX LEISURE INDUSTRIES, :
POLYLOOM CORPORATION OF AMERICA :
d/b/a TENCATE GRASS NORTH AMERICA, :
and TENCATE THIOLON B.V., :
    :
                  Defendants. :
---------------------------------------------------------------x

**DECLARATION OF MICHAEL J. BRESLIN IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL**

      Pursuant to 28 U.S.C. § 1746, the undersigned MICHAEL J. BRESLIN, hereby declares as follows:

      1.     My name is Michael J. Breslin. I am an attorney licensed to practice law in the State of Georgia and in good standing with the Georgia Bar. I work for the firm Kilpatrick Townsend & Stockton, LLP, counsel for defendants TenCate Thiolon Middle East, LLC f/k/a Mattex Leisure Industries, Polyloom Corporation of America d/b/a TenCate Grass North America, and TenCate Thiolon B.V.

(collectively, "TenCate").

2. I am actively involved in the above-captioned litigation between TenCate and plaintiffs FieldTurf USA Inc., FieldTurf Inc., and FieldTurf Tarkett SAS (collectively, "FieldTurf").

3. I submit this declaration in support of TenCate's Motion to Compel.

4. Attached as **Exhibit A** hereto are true and correct copies of documents evidencing or describing some of the false and disparaging statements identified by TenCate to date, which TenCate believes were issued by employees of FieldTurf. When Darren Gill published the letter at pages 1-2 of Exhibit A, he attached a copy of FieldTurf's complaint in this action to that letter. TenCate has identified a consistent campaign of such disparaging publications from various employees at various levels within FieldTurf's organization. This campaign has endured for approximately one year, and continues to this day. As days pass, TenCate continues to learn of new publications by FieldTurf either disparaging TenCate and its products or repeating FieldTurf's litigation allegations as though they had already been adjudicated as true.

5. When discovery in this case began, counsel for FieldTurf made no attempt to confer or agree with counsel for TenCate regarding the parameters of FieldTurf's searches for relevant or responsive electronically stored information

("ESI"). Rather, counsel for FieldTurf unilaterally determined the custodians and sources it would search and the search terms it would use. TenCate did not know the parameters of FieldTurf's e-discovery searches until counsel for FieldTurf provided, in a November 3, 2011 letter, a description of the sources and custodians it had unilaterally determined it would search and the search terms it unilaterally decided to use. A true and correct copy of FieldTurf's November 3, 2011 letter, with attachments, is attached as **Exhibit B** hereto. FieldTurf undertook these searches without any notice to, or attempt to confer with, counsel for TenCate regarding their adequacy.

6. The search terms FieldTurf unilaterally employed do not contain several of the key words that TenCate has identified as appearing in FieldTurf's disparaging communications to date. *Compare* Ex. B at p. 11-18 (search parameters employed by FieldTurf) *with* Ex. A (showing commonly employed disparaging statements by FieldTurf's employees). The search terms also do not include a search for "TenCate" in connection with any such key words. Ex. B at p. 11-18. The search terms also do not include a search for "trademark" or appear to contain any searches targeted at retrieving documents responsive to TenCate's several document requests and interrogatories seeking information relevant to TenCate's trademark claims. *Id.*

7.     FieldTurf's search parameters omit the files of several of FieldTurf's sales personnel, including sales personnel who sent disparaging publications about TenCate to third parties. Ex. B at p. 11-18. For example, TenCate has identified a disparaging letter sent by FieldTurf employee Tim Coury on April 6, 2011. A true and correct copy of Mr. Coury's disparaging April 6, 2011 letter, as well as the record of Mr. Coury's activity from FieldTurf's sales database for that day, is attached hereto as **Exhibit C**. Mr. Coury's April 6, 2011 entry in FieldTurf's internal sales database contains no record of Mr. Coury sending the letter at pages 1-2 of Exhibit C. *See* Ex. C at p. 3-18. Notwithstanding, FieldTurf maintains that searches of its internal sales database are adequate and has refused to search Mr. Coury's correspondence files for similar communications. *See* Ex. B at p. 11 (Mr. Coury is not listed as one of the custodians FieldTurf is searching).

8.     Attached as **Exhibit D** hereto are true and correct copies of 2 documents produced by FieldTurf which TenCate believes were collected from FieldTurf's internal "sales database," and which FieldTurf maintains are an acceptable substitute for producing the actual relevant emails from its actual correspondence files. These documents are often over 50 pages long, and are largely incomprehensible collections of fragments of email chains and notes that FieldTurf's employees selectively placed in FieldTurf's sales database.

9.  Attached as **Exhibit E** hereto is a true and correct copy of a November 10, 2011 email I sent to FieldTurf's counsel in which, *inter alia*, I submitted searches TenCate proposed to cure the inadequacies of FieldTurf's search parameters.

10. Shortly after I sent the email attached as Exhibit D, I had a phone call with Reid Skibell, one of the attorneys representing FieldTurf in this matter. During that call, Mr. Skibell told me that FieldTurf was unwilling to perform the proposed search I transmitted because, *inter alia*, FieldTurf had already committed many of its resources to performing the searches it unilaterally designed and did not have capacity to entertain the additional search.  Further, in a November 14, 2011 email, Mr. Skibell stated FieldTurf was unwilling to even test the results of the proposed search.  A true and correct copy of Mr. Skibell's November 14, 2011 email is attached at **Exhibit F** hereto.

11. Attached as **Exhibit G** hereto is a true and correct copy of a January 18, 2012 letter I received from Mr. Skibell.

12. On or around December 15, 2011, TenCate sent a letter to Mr. Skibell which included a modified version of the original search I proposed in Exhibit D hereto ("Search 1").  A true and correct copy of Search 1 is attached as **Exhibit H** hereto.

13. Attached as **Exhibit I** hereto is a true and correct copy of a December 20, 2011 letter from Mr. Skibell to Thomas Pender, one of the lawyers representing TenCate in this matter.

14. Attached as **Exhibit J** hereto is a true and correct copy of an article from the Beaumont Enterprise, in which an unidentified FieldTurf representative is quoted as saying TenCate supplied "a bad batch of turf." This document is responsive to TenCate's discovery requests, including Interrogatory 18 and Document Request No. 90, for which FieldTurf agreed it would produce responsive non-privileged documents. A true and correct copy of FieldTurf's Objections and Responses to TenCate's Document Requests is attached as **Exhibit K** hereto. To the best of my knowledge, FieldTurf has not produced this document.

15. Attached as **Exhibit L** hereto is a true and correct copy of a February 10, 2012 letter I sent to Mr. Skibell. I received no response to this letter.

16. Attached as **Exhibit M** hereto is a true and correct copy of FieldTurf's Objections and Responses to TenCate's Revised Interrogatories.

17. Thus far, TenCate has identified approximately 1,300 documents FieldTurf has produced containing redactions based on "non-responsiveness." These documents consist of approximately 22,744 pages of materials. In total,

there are approximately 54,282 separate redactions in these 1,300 documents based on "non-responsiveness."

18.     Attached as **Exhibit N** hereto are true and correct copies of certain documents FieldTurf has produced containing redactions on the basis of "non-responsiveness."  These documents appear to contain lists of "Problem Projects" [Ex. L at p.1] and the identification of fields needing "additional infill" [Ex. L at p.7].  TenCate has requested information in discovery concerning such matters, as it is relevant to TenCate's defenses in this case.  Ex. K, No. 14.  The redacted information in Exhibit L appears to relate to performance problems with fields that do not utilize Evolution fiber.  Such information is directly responsive to TenCate's Interrogatory 14 and its Document Requests 30 and 47.

19.     Attached as **Exhibit O** hereto is a true and correct copy of a February 8, 2012 letter from Mr. Pender to Mr. Skibell.

20.     Attached as **Exhibit P** hereto is a true and correct copy of a February 10, 2012 letter from Mr. Skibell to Mr. Pender.

21.     I have personally reviewed documents FieldTurf has produced in this case that appear to be from the correspondence file of John McShane.  After just a brief review of those documents, I was able to identify disparaging communications from Mr. McShane about TenCate and its products, which

communications TenCate had not received or discovered through its own efforts outside of this litigation.

22.    Attached as **Exhibit Q** hereto is a true and correct copy of an March 7-8, 2012 email exchange between myself and Mr. Skibell. In this exchange, Mr. Skibell denied that FieldTurf has any obligation to "log the documents that are responsive to each document request served by TenCate." Mr. Skibell stated FieldTurf has no obligation to do so because it produced all of its documents pursuant to Fed. R. Civ. P. 34(b)(2)(E)(i).

23.    Attached as **Exhibit R** hereto is a true and correct copy of the April 2011 edition of *Athletic Business* Magazine, which contains promotional material utilized by FieldTurf to advertise Revolution Fiber. *See* Ex. R at p. 48. This promotional material is responsive to TenCate's document requests concerning its trademark counterclaims. *See*, *e.g.*, Ex. K (Nos. 57, 58). To the best of TenCate's knowledge, FieldTurf has failed to produce this and other such documents in discovery.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of April, 2012.

s/Michael J. Breslin<br>Michael J. Breslin

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been filed with the U.S. District Court's CM/ECF System and that pursuant thereto, a copy of this pleading has been served upon the following persons by electronic mail:

>Charles K. McKnight, JR.
>**Nations, Toman & McKnight LLP**
>1230 Peachtree Street NE, Suite 2050
>Atlanta, Georgia 30309
>cmcknight@ntmlaw.com

>Bruce S. Kaplan
>**Friedman Kaplan Seiler & Adelman LLP**
>1633 Broadway
>New York, New York 10019-6708
>bkaplan@fklaw.com

This 2nd day of April, 2012.

>s/ Michael J. Breslin
>Michael J. Breslin

>*One of the Attorneys for Defendants*