## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## GEORGIA ROME DIVISION

-----------------------------------------------------------------x
                :

FIELDTURF USA INC., FIELDTURF INC., and   :
FIELDTURF TARKETT SAS,              :

             Plaintiffs,      :    CIVIL ACTION FILE

         - against –      :    NO.: 4:11-CV-0050 - TWT

TENCATE THIOLON MIDDLE EAST, LLC f/k/a :
MATTEX LEISURE INDUSTRIES, POLYLOOM :
CORPORATION OF AMERICA d/b/a TENCATE :
GRASS NORTH AMERICA, and TENCATE   :
THIOLON B.V.,                :

            Defendants.    :

-----------------------------------------------------------------x

### OBJECTIONS AND RESPONSES
### TO REQUESTS FOR ADMISSION

        Plaintiffs FieldTurf USA Inc., FieldTurf Inc. and FieldTurf Tarkett SAS

("FieldTurf"), pursuant to Rule 36 of the Federal Rules of Civil Procedure, object and respond to

the Requests for Admission (the "Requests") of Defendants TenCate Thiolon Middle East, LLC,

Polyloom Corporation of America d/b/a TenCate Grass North America and TenCate Thiolon

B.V. ("TenCate") as follows:

### GENERAL OBJECTIONS

        These General Objections are incorporated into each specific response and

objection hereinafter set forth, whether generally or as to each or any specific Request, as if fully

set forth therein, and will not be repeated or referred to in a specific response or objection.

Where a general objection is repeated or referred to in a specific response, it is for emphasis

only.  FieldTurf reserves the right to amend these Responses and Objections.  All responses will

be subject to the objections contained herein.  FieldTurf submits these Responses and Objections

for the purposes of the pending action only, and subject to all available objections to admissibility.

1.      FieldTurf objects to the Requests to the extent that they purport to impose upon FieldTurf any obligations different from, or greater than, those established or required by the Federal Rules of Civil Procedure or the Rules of this Court.

2.      FieldTurf objects to the Requests to the extent that they seek information that is protected from disclosure pursuant to the attorney-client privilege, the attorney work product doctrine, or otherwise is privileged, protected, or exempt from discovery.  In responding to these Requests, FieldTurf has not provided any information that springs from, or otherwise refers to or arises out of, privileged discussions, interactions, or transactions.  Any disclosure of privileged material is inadvertent and shall not be considered a waiver of any applicable privilege, the work product doctrine, or other immunity.

3.      FieldTurf objects to the Requests to the extent that they purport to call for the disclosure of information not within the possession, custody or control of FieldTurf.

4.      FieldTurf objects to the Requests on the grounds that the information sought is duplicative of documents and deposition testimony already obtained by TenCate in discovery.

5.      FieldTurf objects to the Requests to the extent that they are vague, ambiguous, fail to specify with reasonable particularity the information sought, and/or would unreasonably require FieldTurf to speculate as to the nature and/or scope of the admission sought thereby.

6.      FieldTurf objects to the Requests to the extent that they require FieldTurf to make legal conclusions, and/or presuppose legal conclusions that are disputed.

2

7.     In providing these Responses and Objections to these Requests, FieldTurf does not in any way waive or intend to waive, but rather intends to preserve and is preserving: (a) all objections as to competency, relevance, materiality, and admissibility of any information and/or underlying document identified; (b) all objections as to vagueness, ambiguity, and undue burden; (c) all rights to object on any ground to the use of any information or document identified, in any subsequent proceedings, including the trial of this or any other action; and (d) all rights to object on any ground to any request for further responses to these or any other discovery requests involving or related to the subject matter of the Requests.

8.     FieldTurf provides responses based on information reasonably available to it on the date these responses are signed.  FieldTurf reserves the right to supplement the information set forth below at the appropriate time with any information for which the relevance, responsiveness, or existence becomes apparent at a later date.  FieldTurf also reserves the right to amend, supplement, correct, or clarify any Responses and Objections herein at any time and to interpose additional objections or move for an appropriate protective order if deemed necessary.

9.     FieldTurf objects to the Requests to the extent that they seek information already in TenCate's possession, custody or control.

10.     FieldTurf objects to the Requests to the extent that they call for information which relates to matters not raised by the pleadings, or which is not material and necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  FieldTurf's Responses and Objections to the Requests should not be construed as an admission that any of the requested information is relevant to any issue in this litigation.

2724614.1

11.     Each of the documents provided in Exhibits A through O to these Responses and Objections was produced without Bates numbers by third parties in this action. FieldTurf is providing Exhibits A through O to identify those documents that are referenced (both implicitly and explicitly) in various individual Requests and to respond in whole or in part to those Requests.  A reference to a specific exhibit or document in these Responses and Objections is not an admission of the facts or opinions stated therein, nor is it a representation that it is the only relevant exhibit or document that relates to an individual Request.

2724614.1

## SPECIFIC RESPONSES AND OBJECTIONS

**Request No. 1**

At the time of the negotiations for the Lake Brantley High School field, FieldTurf's vice president of Sales and Marketing offered an upgrade to FieldTurf DUO.

**Response to Request No. 1**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf further objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit A, which is undated and unsigned, for its contents.

**Request No. 2**

At the time of the negotiations for the Lake Brantley High School field, FieldTurf DUO was FieldTurf's newest fiber.

**Response to Request No. 2**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit A, which is undated and unsigned, for its contents.

**Request No. 3**

The price of the upgrade to FieldTurf DUO, offered to representatives of Lake Brantley High School, was $36,000.

**Response to Request No. 3**

FieldTurf objects to this request on the grounds that it presumes facts not in evidence, and on the grounds that it seeks information which is neither material nor necessary in the prosecution or defense of this action, or which is not reasonably calculated to lead to the

discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit A, which is undated and unsigned, for its contents.

## Request No. 4

FieldTurf installed the wrong white inlay back marks when it installed the Lake Brantley High School field.

## Response to Request No. 4

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit B for its contents.

## Request No. 5

When FieldTurf representatives met with Humble ISD representatives on October 25, 2010, FieldTurf informed the Humble ISD representatives that the C-4 Duraspine fiber on Humble's Turner Field was the best on the market when installed.

## Response to Request No. 5

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit C for its contents.  Moreover, because Exhibit C is a summary written by a Humble ISD representative of what unidentified persons, who may or may not have been FieldTurf representatives, allegedly said at an October 25, 2010 meeting, FieldTurf objects to its implicit reference as improper hearsay.

## Request No. 6

When FieldTurf representatives met with Humble ISD representatives on October 25, 2010, FieldTurf representatives represented that C-6 Duraspine was an upgrade from C-4 Duraspine.

2724614.1

**Response to Request No. 6**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit C for its contents.  Moreover, because Exhibit C is a summary written by a Humble ISD representative of what unidentified persons, who may or may not have been FieldTurf representatives, allegedly said at an October 25, 2010 meeting, FieldTurf objects to its implicit reference as improper hearsay.

**Request No. 7**

When FieldTurf representatives met with Humble ISD representatives on October 25, 2010, FieldTurf representatives represented that C-8 Duraspine Pro was the best fiber out at the time.

**Response to Request No. 7**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit C for its contents.  Moreover, because Exhibit C is a summary written by a Humble ISD representative of what unidentified persons, who may or may not have been FieldTurf representatives, allegedly said at an October 25, 2010 meeting, FieldTurf objects to its implicit reference as improper hearsay.

**Request No. 8**

In January of 2010, the only repairs FieldTurf thought were necessary at the Little Elm ISD field were the replacement of the center field logo and the addition of infill to the field.

**Response to Request No. 8**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibits D and E for their contents.

**Request No. 9**

In June of 2010, FieldTurf's counsel represented to Little Elm ISD representatives that FieldTurf did not observe a breakdown of green fibers across the field.

**Response to Request No. 9**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit D for its contents.

**Request No. 10**

FieldTurf found that Little Elm ISD representatives were improperly using the Tenant Sweeper for routine grooming of the field.

**Response to Request No. 10**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit D for its contents.

**Request No. 11**

The manner in which Little Elm ISD representatives used the Tenant Sweeper for grooming of the field was an improper use of maintenance equipment.

**Response to Request No. 11**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibits D and E for their contents.

**Request No. 12**

FieldTurf's legal counsel found it "apparent" that Little Elm ISD's improper use of maintenance equipment caused damage to the school's field.

**Response to Request No. 12**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit D for its contents.

**Request No. 13**

On November 7, 2011, FieldTurf issued a Letter of Commitment to a Field Upgrade at Little Elm High School in which it agreed to replace Little Elm's field with the same Duraspine turf product it initially installed at the school.

**Response to Request No. 13**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit F for its contents.

**Request No. 14**

FTOM-1F is the product identification that FieldTurf used for Duraspine turf made with Evolution 3GS fiber.

9

**Response to Request No. 14**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf admits that FTOM-1F is a product code for Duraspine.

**Request No. 15**

FTOM-1F is the turf made with the Evolution 3GS fiber that is the subject of the Current Litigation.

**Response to Request No. 15**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf admits that FTOM-1F is a product code for Duraspine and certain Duraspine fields are the subject of the Current Litigation.

**Request No. 16**

On September 12, 2011, FieldTurf represented in correspondence from Martin Olinger to Little Elm ISD that it's original FieldTurf Duraspine turf was now being made with an "improved polymer."

**Response to Request No. 16**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit G for its contents.

**Request No. 17**

FieldTurf's original Duraspine was never changed or upgraded with an "improved polymer."

**Response to Request No. 17**

FieldTurf objects to this request on the grounds that it is vague and ambiguous. To the extent that a response is required, FieldTurf denies the request.

**Request No. 18**]

The documents produced by Memphis University School, and marked MUS000015-MUS000019, were originally sent by FieldTurf to Memphis University School prior to the school's installation of synthetic turf.

**Response to Request No. 18**

FieldTurf objects to this request on the grounds that it is vague and ambiguous. FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence. To the extent that a response is required, FieldTurf denies any knowledge of how or when Memphis University School obtained the documents marked MUS000015-MUS000019 and further refers to the documents for their contents.

**Request No. 19**

FieldTurf intended that Memphis University School would rely upon the information in the documents, bates labeled MUS000015- MUS000019, in its decision on selecting synthetic turf for its school.

**Response to Request No. 19**

FieldTurf objects to this request on the grounds that it is vague and ambiguous and on the grounds that it calls for a legal conclusion. FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of

11

admissible evidence.  Because FieldTurf denies any knowledge of how or when Memphis University School obtained the documents marked MUS000015-MUS000019, FieldTurf denies the request and further refers to the documents for their contents.

**Request No. 20**

In bates MUS000015, FieldTurf representatives represented to Memphis University School that Duraspine stands up to over 35,000 cycles of testing.

**Response to Request No. 20**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  Because FieldTurf denies any knowledge of how or when Memphis University School obtained the document marked MUS000015, FieldTurf denies the request and further refers to the document for its contents.

**Request No. 21**

Memphis University School purchased a Duraspine (FTOM-1F) turf system for its Hull Dobbs Field in 2006.

**Response to Request No. 21**

Admitted.

**Request No. 22**

In October 2009, while investigating complaints at the Midlothian High School practice field and stadium in Texas, FieldTurf representatives found both fields were "at least ¼ to ½ lower" in infill then they should have been.

**Response to Request No. 22**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit H for its contents.

12

**Request No. 23**

After FieldTurf representatives inspected the Midlothian High School practice field and stadium in January 2010, FieldTurf representatives offered to add infill to both the practice field and stadium field.

**Response to Request No. 23**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf refers to Exhibit I for its contents.

**Request No. 24**

On June 15, 2010, and July 23, 2010, FieldTurf offered to replace both Midlothian ISD fields with Duraspine Pro.

**Response to Request No. 24**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is required, FieldTurf denies the request and refers to the documents produced by Midlothian ISD and documents produced by FieldTurf relating to Midlothian ISD, including but not limited to Exhibits J, K, L, and M, for their contents.

**Request No. 25**

On July 23, 2010, FieldTurf offered to replace both Midlothian ISD fields with Duraspine Pro at no extra charge.

**Response to Request No. 25**

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is

required, FieldTurf denies the request and refers to the documents produced by Midlothian ISD and documents produced by FieldTurf relating to Midlothian ISD, including but not limited to Exhibits J, K, L, and M, for their contents.

## Request No. 26

On June 16, 2010, FieldTurf offered to replace both Midlothian ISD fields with Duraspine Pro for $160,000, plus applicable taxes or bonds required.

## Response to Request No. 26

FieldTurf objects to this request on the grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence. To the extent that a response is required, FieldTurf denies the request and refers to the documents produced by Midlothian ISD and documents produced by FieldTurf relating to Midlothian ISD, including but not limited to Exhibits J, K, L, and M, for their contents.

## Request No. 27

Tait-Pitkin Engineering issued a Technical Assessment of the Midlothian ISD fields.

## Response to Request No. 27

FieldTurf objects to this request on the grounds that it is vague and ambiguous. FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence. To the extent that a response is necessary, FieldTurf refers to Exhibit N for its contents.

## Request No. 28

Tait-Pitkin found that, when comparing the FieldTurf product to the original project specifications issued by Midlothian ISD for its fields, the FieldTurf product supplied failed to meet the vast majority of the original specifications.

2724614.1

**Response to Request No. 28**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is necessary, FieldTurf refers to Exhibit N for its contents.

**Request No. 29**

Tait-Pitkin found that the FieldTurf product supplied to Midlothian ISD for its fields failed to meet specifications set forth in the project specifications issued by Midlothian for its fields.

**Response to Request No. 29**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is necessary, FieldTurf refers to Exhibit N for its contents.

**Request No. 30**

Tait-Pitkin found inconsistencies in the material, backing material application, and "tuft bind" strengths of the FieldTurf product supplied to Midlothian ISD.

**Response to Request No. 30**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is necessary, FieldTurf refers to Exhibit N for its contents.

15

**Request No. 31**

Tait-Pitkin found the FieldTurf system installed at Midlothian ISD failed to meet the project specifications in the following ways: pile weight, primary backing weight, secondary backing weight, total weight, perforations.

**Response to Request No. 31**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf

further objects to this request on that grounds that it seeks information which is neither material

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated

to lead to the discovery of admissible evidence.  To the extent that a response is necessary,

FieldTurf refers to Exhibit N for its contents.

**Request No. 32**

Tait-Pitkin found the pile weight used in the FieldTurf system installed at Midlothian ISD failed to meet the project specifications.

**Response to Request No. 32**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf

further objects to this request on that grounds that it seeks information which is neither material

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated

to lead to the discovery of admissible evidence.  To the extent that a response is necessary,

FieldTurf refers to Exhibit N for its contents.

**Request No. 33**

Tait-Pitkin found the primary backing weight used in the FieldTurf system installed at Midlothian ISD failed to meet the project specifications.

**Response to Request No. 33**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf

further objects to this request on that grounds that it seeks information which is neither material

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated

to lead to the discovery of admissible evidence.  To the extent that a response is necessary,

FieldTurf refers to Exhibit N for its contents.

**Request No. 34**

Tait-Pitkin found the secondary backing weight used in the FieldTurf system installed at Midlothian ISD failed to meet the project specifications.

**Response to Request No. 34**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf

further objects to this request on that grounds that it seeks information which is neither material

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated

to lead to the discovery of admissible evidence.  To the extent that a response is necessary,

FieldTurf refers to Exhibit N for its contents.

**Request No. 35**

Tait-Pitkin found the total weight of the FieldTurf system installed at Midlothian ISD failed to meet the project specifications.

**Response to Request No. 35**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf

further objects to this request on that grounds that it seeks information which is neither material

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated

to lead to the discovery of admissible evidence.  To the extent that a response is necessary,

FieldTurf refers to Exhibit N for its contents.

**Request No. 36**

Tait-Pitkin found the perforations in the FieldTurf system installed at Midlothian ISD failed to meet the project specifications.

**Response to Request No. 36**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf

further objects to this request on that grounds that it seeks information which is neither material

2724614.1

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent that a response is necessary, FieldTurf refers to Exhibit N for its contents.

**Request No. 37**

In January 2012, Tim Coury of FieldTurf represented to Santa Ynez High School's Athletic Director that the Duraspine turf that would be used as a replacement on Santa Ynez's field was a Duraspine with an "upgraded polymer."

**Response to Request No. 37**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  FieldTurf denies that Tim Coury is or ever was a FieldTurf employee, and to the extent that the request fails to indicate which specific discussion or communication between these two persons in January 2012 is referred to, FieldTurf denies having sufficient knowledge or information to answer this request.  To the extent that a response is necessary, FieldTurf refers to Exhibit O for its contents.

**Request No. 38**

FieldTurf never changed the polymer used in Duraspine.

**Response to Request No. 38**

FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf further objects to this request on that grounds that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf denies the request.

2724614.1

**Request No. 39**

      Tim Coury was untruthful when he described Duraspine as a product containing an "upgraded polymer" in January 2012.

**Response to Request No. 39**

      FieldTurf objects to this request on the grounds that it is vague and ambiguous.  FieldTurf

further objects to this request on that grounds that it seeks information which is neither material

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated

to lead to the discovery of admissible evidence.  FieldTurf denies that Tim Coury is or ever was

a FieldTurf employee, and to the extent that the request fails to indicate which specific

discussion or communication in January 2012 is referred to, FieldTurf denies having sufficient

knowledge or information to answer this request.  To the extent a response is required, FieldTurf

denies the request.

**Request No. 40**

      The 2005 Supply Agreement does not specify that Evolution 3GS will be made with C-4, C-6 or C-8 resin.

**Response to Request No. 40**

      FieldTurf objects to this Request on the ground that it seeks information which is neither

material nor necessary to the prosecution or defense of this action, or which is not reasonably

calculated to lead to the discovery of admissible evidence.  FieldTurf further objects to this

Request on the ground that it calls for contract interpretation and a legal conclusion.  To the

extent a response is required, FieldTurf refers to the 2005 Supply Agreement for its contents.

**Request No. 41**

      The 2005 Supply Agreement did not include any product warranty for Evolution 3GS fiber, other than the fiber was to "be as to current specifications sheets by Mattex," with the exception that Mattex agreed to ensure a thermal shrinkage of the wrapping fiber of at least 20% in all shipments from January 10, 2005 onward.

2724614.1

**Response to Request No. 41**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the 2005 Supply Agreement for its contents.

**Request No. 42**

In Appendix II of the 2005 Supply Agreement, Mattex said only that the raw material for Evolution 3GS was "PE and additives."

**Response to Request No. 42**

FieldTurf objects to this Request on the ground that it is vague and ambiguous, and seeks information which is neither material nor necessary to the prosecution or defense of this action or which is not reasonably calculated to lead to the discovery of admissible evidence.  FieldTurf further objects to this request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the Appendix II of the 2005 Supply Agreement for its contents.

**Request No. 43**

The February 2006 Mattex Warranty was the first warranty issued by Mattex concerning Evolution 3GS fiber.

**Response to Request No. 43**

FieldTurf objects to this Request on the ground that it is vague and ambiguous, and seeks information which is neither material nor necessary to the prosecution or defense of this action or which is not reasonably calculated to lead to the discovery of admissible evidence.  FieldTurf further objects that is has no knowledge or information concerning what warranties, if any, Mattex issued to other customers.  To the extent a response is required, FieldTurf denies the request.

20

**Request No. 44**

The February 2006 Mattex Warranty specifically excluded damages to the fiber caused by abuse of the sport surface, either mechanically or chemically.

**Response to Request No. 44**

FieldTurf objects to this request on the ground that it is vague and ambiguous.  FieldTurf further objects to this request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the February 2006 Mattex Warranty for its contents.

**Request No. 45**

The February 2006 Mattex Warranty specifically excluded damages to the fiber caused by excessive use.

**Response to Request No. 45**

FieldTurf objects to this request on the ground that it is vague and ambiguous.  FieldTurf further objects to this request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the February 2006 Mattex Warranty for its contents.

**Request No. 46**

The February 2006 Mattex Warranty limits Mattex's liability for damages to the invoice value of the grass yarn supplied.

**Response to Request No. 46**

FieldTurf objects to this request on the ground that it calls for contract interpretation and a legal conclusion.   To the extent a response is required, FieldTurf refers to the February 2006 Mattex Warranty for its contents.

**Request No. 47**

In the February 2006 Mattex Warranty, Mattex did not warrant, guarantee or represent that Evolution 3GS fiber would be made from C-4, C-6, or C-8 resin.

**Response to Request No. 47**

FieldTurf objects to this request on the ground that it is vague and ambiguous, and seeks information which is neither material nor necessary to the prosecution or defense of this action or which is not reasonably calculated to lead to the discovery of admissible evidence. FieldTurf further objects to this request on the ground that it calls for contract interpretation and a legal conclusion. To the extent a response is required, FieldTurf refers to the February 2006 Mattex Warranty for its contents.

**Request No. 48**

The 2006 Supply Agreement does not specify that Evolution 3GS will be made with C-4, C-6 or C-8 resin.

**Response to Request No. 48**

FieldTurf objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence. FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion. To the extent a response is required, FieldTurf refers to the 2006 Supply Agreement for its contents.

**Request No. 49**

In Mattex's June 2006 Limited Warranty, it did not warrant, guarantee or represent that Evolution 3GS fiber would be made from C-4, C-6, or C-8 resin.

**Response to Request No. 49**

FieldTurf objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence. FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion. To the extent a response is required, FieldTurf refers to the June 2006 Limited Warranty for its contents.

22

**Request No. 50**

The June 2006 Limited Warranty assumed fields would be used for a maximum of 1,250 hours per year.

**Response to Request No. 50**

FieldTurf objects to this Request on the ground that it is vague and ambiguous, and seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006 Limited Warranty for its contents.

**Request No. 51**

Mattex excluded resilience and ability to stand straight from the June 2006 Limited Warranty.

**Response to Request No. 51**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006 Limited Warranty for its contents.

**Request No. 52**

The June 2006 Limited Warranty specifically excluded damages to the fiber caused by exposure to thermal stress beyond designed use.

**Response to Request No. 52**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006 Limited Warranty for its contents.

2724614.1

**Request No. 53**

The June 2006 Limited Warranty specifically excluded damages to the fiber caused by mechanical stress beyond designed use.

**Response to Request No. 53**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006 Limited Warranty for its contents.

**Request No. 54**

The June 2006 Limited Warranty specifically excluded damages to the fiber caused by failure to use proper infill grade and level according to FIFA accredited test institutes such as ISA or Labosport.

**Response to Request No. 54**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006 Limited Warranty for its contents.

**Request No. 55**

The June 2006 Limited Warranty specifically excluded damages to the fiber caused by use of footwear and equipment that are not designed for use on the fiber.

**Response to Request No. 55**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006 Limited Warranty for its contents.

**Request No. 56**

The June 2006 Limited Warranty did not cover normal wear and tear or normal aging of the product.

**Response to Request No. 56**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006 Limited Warranty for its contents.

**Request No. 57**

The June 2006 Limited Warranty specifically excluded damages to the fiber caused by improper maintenance of the grass carpet system of which the fibers were part.

**Response to Request No. 57**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006 Limited Warranty for its contents.

**Request No. 58**

The June 2006 Limited Warranty limits Mattex's liability for damages to the original purchase price of the fiber.

**Response to Request No. 58**

FieldTurf objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006 Limited Warranty for its contents.

**Request No. 59**

The June 2006 Limited Warranty excludes Mattex's liability for special, indirect, consequential and punitive damages.

2724614.1

**Response to Request No. 59**

FieldTurf objects to this Request on the ground that it calls for contract interpretation and

a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006

Limited Warranty for its contents.

**Request No. 60**

The June 2006 Limited Warranty excludes Mattex's liability for loss of anticipated
profits, loss of use, loss of revenue and cost of capital.

**Response to Request No. 60**

FieldTurf objects to this Request on the ground that it calls for contract interpretation and

a legal conclusion.  To the extent a response is required, FieldTurf refers to the June 2006

Limited Warranty for its contents.

**Request No. 61**

In the 2008 Supply Agreement, TenCate did not warrant, guarantee or represent that
Evolution 3GS fiber would be made from C-4, C-6, or C-8 resin.

**Response to Request No. 61**

FieldTurf objects to this Request on the ground that it seeks information which is neither

material nor necessary to the prosecution or defense of this action, or which is not reasonably

calculated to lead to the discovery of admissible evidence.  FieldTurf further objects to this

Request on the ground that it calls for contract interpretation and a legal conclusion.  To the

extent a response is required, FieldTurf refers to the 2008 Supply Agreement for its contents.

**Request No. 62**

When FieldTurf began purchasing Evolution Plus fibers, it continued to purchase
Evolution 3GS fibers under the terms of the 2008 Supply Agreement.

**Response to Request No. 62**

Admitted.

**Request No. 63**

Pursuant to the 2008 Supply Agreement, FieldTurf had the right to review and comment on product specifications and performance criteria for Evolution 3GS.

**Response to Request No. 63**

FieldTurf objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the 2008 Supply Agreement for its contents.

**Request No. 64**

FieldTurf never submitted any comments on the product specifications for Evolution 3GS as set forth in the 2008 Supply Agreement.

**Response to Request No. 64**

FieldTurf objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf, upon information and belief, admits.

**Request No. 65**

FieldTurf never submitted any comments on the product performance criteria for Evolution 3GS as set forth in the 2008 Supply Agreement.

**Response to Request No. 65**

FieldTurf objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf, upon information and belief, admits.

2724614.1

**Request No. 66**

      Under the Limited Warranty contained in the 2008 Supply Agreement, TenCate is not responsible for removal or disposal of turf made with defective fiber.

**Response to Request No. 66**

      FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf

further objects to this Request on the ground that it calls for contract interpretation and a legal

conclusion.  To the extent a response is required, FieldTurf refers to the Limited Warranty

contained in the 2008 Supply Agreement for its contents.

**Request No. 67**

      Under the Limited Warranty contained in the 2008 Supply Agreement, TenCate is not responsible for manufacture or installation of new turf installed upon removal of turf made with defective fiber.

**Response to Request no. 67**

      FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf

further objects to this Request on the ground that it calls for contract interpretation and a legal

conclusion.  To the extent a response is required, FieldTurf refers to the Limited Warranty

contained in the 2008 Supply Agreement for its contents.

**Request No. 68**

      The Limited Warranty contained in the 2008 Supply Agreement specifically excluded damages to the fiber caused by improper design or failure of the sub-base.

**Response to Request No. 68**

      FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf

further objects to this Request on the ground that it calls for contract interpretation and a legal

conclusion.  To the extent a response is required, FieldTurf refers to the Limited Warranty

contained in the 2008 Supply Agreement for its contents.

2724614.1

**Request No. 69**

The Limited Warranty contained in the 2008 Supply Agreement specifically excluded damages to the fiber caused by wear or abrasion caused by an inadequate sub-base.

**Response to Request No. 69**

FieldTurf objects to this Request on the ground that it is vague and ambiguous. FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion. To the extent a response is required, FieldTurf refers to the Limited Warranty contained in the 2008 Supply Agreement for its contents.

**Request No. 70**

The Limited Warranty contained in the 2008 Supply Agreement specifically excluded damages to the fiber caused by use of infill products of, or superior to, the grade required by FieldTurf's specifications.

**Response to Request No. 70**

FieldTurf objects to this Request on the ground that it is vague and ambiguous. FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion. To the extent a response is required, FieldTurf refers to the Limited Warranty contained in the 2008 Supply Agreement for its contents.

**Request No. 71**

The Limited Warranty contained in the 2008 Supply Agreement specifically excluded damages to the fiber caused by failure to maintain infill.

**Response to Request No. 71**

FieldTurf objects to this Request on the ground that it is vague and ambiguous. FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion. To the extent a response is required, FieldTurf refers to the Limited Warranty contained in the 2008 Supply Agreement for its contents.

**Request No. 72**

The Limited Warranty contained in the 2008 Supply Agreement specifically excluded damages to the fiber caused by use of footwear other than footwear with cleats or with sharp or abrasive surfaces.

**Response to Request No. 72**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the Limited Warranty contained in the 2008 Supply Agreement for its contents.

**Request No. 73**

The Limited Warranty contained in the 2008 Supply Agreement specifically excluded damages to the fiber caused by use of footwear with flat soles.

**Response to Request No. 73**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the Limited Warranty contained in the 2008 Supply Agreement for its contents.

**Request No. 74**

The Limited Warranty contained in the 2008 Supply Agreement specifically excluded damages to the fiber caused by use of improper cleaning methods.

**Response to Request No. 74**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the Limited Warranty contained in the 2008 Supply Agreement for its contents.

**Request No. 75**

The Limited Warranty contained in the 2008 Supply Agreement specifically excluded damages to the fiber caused by improper processing of the product, including tufting, coating, texturizing or twisting.

**Response to Request No. 75**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the Limited Warranty contained in the 2008 Supply Agreement for its contents.

**Request No. 76**

The Limited Warranty contained in the 2008 Supply Agreement specifically excluded damages to the fiber caused by failure to maintain the fiber or turf.

**Response to Request No. 76**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the Limited Warranty contained in the 2008 Supply Agreement for its contents.

**Request No. 77**

The Limited Warranty contained in the 2008 Supply Agreement did not cover normal wear and tear of the product.

**Response to Request No. 77**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the Limited Warranty contained in the 2008 Supply Agreement for its contents.

**Request No. 78**

The Limited Warranty contained in the 2008 Supply Agreement did not cover excessive use of synthetic turf containing Evolution 3GS fiber.

**Response to Request No. 78**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the Limited Warranty contained in the 2008 Supply Agreement for its contents.

**Request No. 79**

The 2008 Supply Agreement limits TenCate's liability for damages to the amount actually paid by FieldTurf to TenCate during the preceding 12 months.

**Response to Request No. 79**

FieldTurf objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the 2008 Supply Agreement for its contents.

**Request No. 80**

The 2008 Supply Agreement excludes TenCate's liability for lost profits and for any indirect, incidental, special or consequential damages.

**Response to Request No. 80**

FieldTurf objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the 2008 Supply Agreement for its contents.

**Request No. 81**

Evolution 3GS is not listed in the warranty on UV stability and tensile strength contained in the 2008 Supply Agreement.

**Response to Request No. 81**

FieldTurf objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to the 2008 Supply Agreement for its contents.

**Request No. 82**

The yarn specifications set forth in Schedule B of the 2008 Supply Agreement are for reference only.

**Response to Request No. 82**

FieldTurf objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to Schedule B of the 2008 Supply Agreement for its contents.

**Request No. 83**

The yarn specifications set forth in Schedule B of the 2008 Supply Agreement were based upon TenCate's standards for testing procedures.

**Response to Request No. 83**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for contract interpretation and a legal conclusion.  To the extent a response is required, FieldTurf refers to Schedule B of the 2008 Supply Agreement for its contents.

**Request No. 84**

Fields made with Revolution fiber have a heavier face weight than fields made with Evolution 3GS fiber.

**Response to Request No. 84**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated

33

to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf admits.

**Request No. 85**

FieldTurf performed independent performance testing for durability of Evolution 3GS fiber prior to execution of the 2005 Supply Agreement.

**Response to Request 85**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf admits that prior to execution of the 2005 Supply Agreement it performed some performance testing for durability of carpet samples and monofilament fibers provided to it by Mattex, but states that it lacks knowledge as to whether such samples and fibers were of Evolution 3GS.

**Request No. 86**

FieldTurf performed independent performance testing for durability of Evolution 3GS fiber prior to 2005.

**Response to Request No. 86**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf admits that prior to 2005 it performed some performance testing for durability of carpet samples and monofilament fibers provided to it by Mattex, but states that it lacks knowledge as to whether such samples and fibers were of Evolution 3GS.

34

**Request No. 87**

FieldTurf performed independent performance testing for UV stability of Evolution 3GS fiber prior to execution of the 2005 Supply Agreement.

**Response to Request No. 87**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf admits that prior to execution of the 2005 Supply Agreement it performed some performance testing for UV stability of carpet samples and monofilament fibers provided to it by Mattex, but states that it lacks knowledge as to whether such samples and fibers were of Evolution 3GS.

**Request No. 88**

FieldTurf performed independent performance testing for UV stability of Evolution 3GS fiber prior to 2005.

**Response to Request No. 88**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf admits that prior to 2005 it performed some performance testing for UV stability of carpet samples and monofilament fibers provided to it by Mattex, but states that it lacks knowledge as to whether such samples and fibers were of Evolution 3GS.

**Request No. 89**

FieldTurf performed independent performance testing for durability of Evolution 3GS fiber prior to execution of the 2006 Supply Agreement.

2724614.1

**Response to Request No. 89**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf admits that prior to execution of the 2006 Supply Agreement it performed some performance testing for durability of carpet samples and monofilament fibers provided to it by Mattex, but states that it lacks knowledge as to whether such samples and fibers were of Evolution 3GS.

**Request No. 90**

FieldTurf performed independent performance testing for durability of Evolution 3GS fiber prior to 2006.

**Response to Request No. 90**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf admits that prior to 2006 it performed some performance testing for durability of carpet samples and monofilament fibers provided to it by Mattex, but states that it lacks knowledge as to whether such samples and fibers were of Evolution 3GS.

**Request No. 91**

FieldTurf performed independent performance testing for UV stability of Evolution 3GS fiber prior to execution of the 2006 Supply Agreement.

**Response to Request No. 91**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it seeks information which is neither material

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf admits that prior to execution of the 2006 Supply Agreement it performed some performance testing for UV stability of carpet samples and monofilament fibers provided to it by Mattex, but states that it lacks knowledge as to whether such samples and fibers were of Evolution 3GS.

**Request No. 92**

FieldTurf performed independent performance testing for UV stability of Evolution 3GS fiber prior to 2006.

**Response to Request No. 92**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf admits that prior to 2006 it performed some performance testing for UV stability of carpet samples and monofilament fibers provided to it by Mattex, but states that it lacks knowledge as to whether such samples and fibers were of Evolution 3GS.

**Request No. 93**

FieldTurf, through Derek Beardon, was aware that Polyloom Corporation of America manufactured Evolution 3GS fibers using a different recipe than TenCate Thiolon Middle East, LLC.

**Response to Request No. 93**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent a response is required, admits that

Derek Bearden became aware at a certain time that Polyloom Corporation of America

manufactured Duraspine fibers using a different resin than TenCate Thiolon Middle East, LLC.

**Request No. 94**

 FieldTurf instituted a policy or directive to use less infill than specified in the product
specifications for Duraspine.

**Response to Request No. 94**

 FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf

further objects to this Request on the ground that it seeks information which is neither material

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated

to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf

denies the request.

**Request No. 95**

 Prior to 2010, no formal quality control program existed at FieldTurf.

**Response to Request No. 95**

 FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf

further objects to this Request on the ground that it seeks information which is neither material

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated

to lead to the discovery of admissible evidence.  To the extent a response is required, FieldTurf

denies the request.

**Request No. 96**

 Prior to 2010, no formal quality control program existed at FieldTurf with respect to
inspection of incoming products used to manufacture turf.

**Response to Request No. 96**

 FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf

further objects to this Request on the ground that it seeks information which is neither material

2724614.1

nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence. To the extent a response is required, FieldTurf denies the request.

### Request No. 97

Prior to 2010, no formal quality control program existed at FieldTurf with respect to the manufacturing of its turf products.

### Response to Request No. 97

FieldTurf objects to this Request on the ground that it is vague and ambiguous. FieldTurf further objects to this Request on the ground that it seeks information which is neither material nor necessary to the prosecution or defense of this action, or which is not reasonably calculated to lead to the discovery of admissible evidence. To the extent a response is required, FieldTurf denies the request.

### Request No. 98

Bates FT00327668-FT00327669 represents a true and accurate copy of correspondence signed by Darren Gill.

### Response to Request No. 98

Admitted.

### Request No. 99

A document identical to, or containing the same statements as, those in Bates FT00327668-FT00327669 was sent by FieldTurf to at least one individual within the synthetic turf industry.

### Response to Request No. 99

FieldTurf objects to this Request on the ground that it is vague and ambiguous. To the extent a response is required, FieldTurf admits that FT00327668-FT00327669 was sent to Shawn Clark (C-CON, Inc.), Dean Matthews (Grizzly Football Association), Matt Tauscher (Bowman Consulting) and Cody Francis (Bowman Consulting).

**Request No. 100**

A document identical to, or containing the same statements as, those in Bates FT00327668-FT00327669 was sent by FieldTurf to at least one individual within the synthetic turf industry, along with a copy of the Complaint in the Current Litigation.

**Response to Request No. 100**

FieldTurf objects to this Request on the ground that it is vague and ambiguous. To the

extent a response is required, FieldTurf admits that FT00327668-FT00327669 was sent to Shawn

Clark (C-CON, Inc.), Dean Matthews (Grizzly Football Association), Matt Tauscher (Bowman

Consulting) and Cody Francis (Bowman Consulting), along with a copy of the Complaint in the

Current Litigation.

**Request No. 101**

A document identical to, or containing the same statements as, those in Bates FT00327668-FT00327669 was sent by FieldTurf to at least one architect or architectural firm.

**Response to Request No. 101**

FieldTurf objects to this Request on the ground that it is vague and ambiguous. To the

extent a response is required, FieldTurf denies the request and refers to its Responses to Requests

99 and 100.

**Request No. 102**

A document identical to, or containing the same statements as, those in Bates FT00327668-FT00327669 was sent by FieldTurf to at least one architect or architectural firm, along with a copy of the Complaint in the Current Litigation.

**Response to Request No. 102**

FieldTurf objects to this Request on the ground that it is vague and ambiguous. To the

extent a response is required, FieldTurf denies the request and refers to its Responses to Requests

99 and 100.

**Request No. 103**

A document identical to, or containing the same statements as, those in Bates FT00327668-FT00327669 was sent by FieldTurf to at least one synthetic turf installer.

**Response to Request 103**

FieldTurf objects to this Request on the ground that it is vague and ambiguous. To the

extent a response is required, FieldTurf denies the request and refers to its Responses to Requests

99 and 100.

**Request No. 104**

A document identical to, or containing the same statements as, those in Bates FT00327668-FT00327669 was sent by FieldTurf to at least one synthetic turf installer, along with a copy of the Complaint in the Current Litigation.

**Response to Request No. 104**

FieldTurf objects to this Request on the ground that it is vague and ambiguous. To the

extent a response is required, FieldTurf denies the request and refers to its Responses to Requests

99 and 100.

**Request No. 105**

A document identical to, or containing the same statements as, those in Bates FT00327668-FT00327669 was sent by FieldTurf to at least one end-user.

**Response to Request No. 105**

FieldTurf objects to this Request on the ground that it is vague and ambiguous. To the

extent a response is required, FieldTurf admits that FT00327668-FT00327669 was sent to Dean

Matthews of the Grizzly Football Association.

**Request No. 106**

A document identical to, or containing the same statements as, those in Bates FT00327668-FT00327669 was sent by FieldTurf to at least one end-user, along with a copy of the Complaint in the Current Litigation.

**Response to Request No. 106**

FieldTurf objects to this Request on the ground that it is vague and ambiguous. To the extent a response is required, FieldTurf admits that FT00327668-FT00327669 was sent to Dean Matthews of the Grizzly Football Association, along with a copy of the Complaint in the Current Litigation.

**Request No. 107**

Bates FT00327668-FT00327669 was sent by FieldTurf to the Grizzly Football Association.

**Response to Request No. 107**

Admitted.

**Request No. 108**

Bates FT00327668-FT00327669 was sent by FieldTurf to the Grizzly Football Association, along with a copy of the Complaint in the Current Litigation.

**Response to Request No. 108**

Admitted.

**Request No. 109**

Bates FT00327668-FT00327669 was sent by FieldTurf to a representative of Shaw/Sportexe.

**Response to Request No. 109**

Denied.

**Request No. 110**

Bates FT00327668-FT00327669 was sent by FieldTurf to a representative of Shaw/Sportexe, along with a copy of the Complaint in the Current Litigation.

**Response to Request No. 110**

Denied.

**Request No. 111**

A copy of the Complaint in the Current Litigation was sent as an enclosure along with Bates FT00327668-FT00327669.

**Response to Request No. 111**

Admitted.

**Request No. 112**

Bates FT00327664-FT00327667 represents a true and accurate copy of correspondence sent by John McShane to Matthew Tauscher and Cody Francis at Bowman Consulting.

**Response to Request No. 112**

Admitted.

**Request No. 113**

Bates FT00327664-FT00327667 was sent by Field Turf to at least one architect.

**Response to Request No. 113**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  To the extent that a response is required, FieldTurf denies the request except admits that the document bearing Bates number FT00327664-FT00327667 was sent to Matthew Tauscher and Cody Francis at Bowman Consulting.

**Request No. 114**

Bates FT00327664-FT00327667 was sent by Field Turf to at least one synthetic turf installer.

**Response to Request No. 114**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  To the extent that a response is required, FieldTurf denies the request except admits that the document bearing Bates number FT00327664-FT00327667 was sent to Matthew Tauscher and Cody Francis at Bowman Consulting.

**Request No. 115**

Bates FT00327664-FT00327667 was sent by Field Turf to at least one end-user.

**Response to Request No. 115**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  To the

extent that a response is required, FieldTurf denies the request except admits that the document

bearing Bates number FT00327664-FT00327667 was sent to Matthew Tauscher and Cody

Francis at Bowman Consulting.

**Request No. 116**

Bates TENCATE0057720-TENCATE0057722 represents a true and accurate copy of an
article titled "Beaverton School District to Spend up to $850,000 to Replace Failing Artificial
Turf Fields" published on OregonLive.com.

**Response to Request No. 116**

Admitted.

**Request No. 117**

The fields at Westview and Southridge high schools in Oregon do not contain Evolution
3GS fiber.

**Response to Request No. 117**

Admitted, except FieldTurf states that the fields at Westview and Southridge high schools

in Oregon were manufactured with fiber sold to FieldTurf by TenCate.

**Request No. 118**

The fields at Westview and Southridge high schools in Oregon are not fields
encompassed within FieldTurf's claims in the Current Litigation.

**Response to Request No. 118**

Admitted, except FieldTurf states that the fields at Westview and Southridge high schools

in Oregon were manufactured with fiber sold to FieldTurf by TenCate.

**Request No. 119**

FieldTurf representatives met with the End-user concerning a synthetic field installation at Northeast Regional Park in Polk County, Florida.

**Response to Request No. 119**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  To the

extent a response is required, FieldTurf admits.

**Request No. 120**

The architect's original specifications for the field to be installed at Northeast Regional Park in Polk County, Florida, called for XP fiber manufactured by TenCate.

**Response to Request No. 120**

FieldTurf objects to this Request on the ground that is vague and ambiguous.  To the

extent that a response is required, FieldTurf states that it lacks information sufficient to either

admit or deny the statement made in this Request.

**Request No. 121**

Prior to FieldTurf's representatives' meeting with the End-user for the synthetic turf installation at Northeast Regional Park in Polk County, Florida, the only bids allowed to be submitted for the project were those utilizing TenCate's XP fiber.

**Response to Request No. 121**

FieldTurf objects to this Request on the ground that is vague and ambiguous.  To the

extent that a response is required, FieldTurf states that it lacks information sufficient to either

admit or deny the statement made in this Request.

**Request No. 122**

Following FieldTurfs' representatives' meeting with the End-user for the synthetic turf installation at Northeast Regional Park in Polk County, Florida, the End-user allowed bids to be submitted that utilized other fibers besides TenCate's XP fiber.

**Response to Request No. 122**

FieldTurf objects to this Request on the ground that is vague and ambiguous.  To the extent that a response is required, FieldTurf states that it lacks information sufficient to either admit or deny the statement made in this Request.

**Request No. 123**

The bid to which the synthetic field installation project at Northeast Regional Park in Polk County, Florida was awarded called for use of Bonar Ultra fiber.

**Response to Request No. 123**

FieldTurf objects to this Request on the ground that is vague and ambiguous.  To the extent that a response is required, FieldTurf states that it lacks information sufficient to either admit or deny the statement made in this Request.

**Request No. 124**

During the meeting between FieldTurf representatives and the End-user concerning the field to be installed at Northeast Regional Park in Polk County, Florida, FieldTurf representatives referenced the Current Litigation.

**Response to Request No. 124**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  To the extent that a response is required, FieldTurf denies the request.

**Request No. 125**

During the meeting between FieldTurf representatives and the End-user concerning the field to be installed at Northeast Regional Park in Polk County, Florida, FieldTurf representatives represented that FieldTurf would win the Current Litigation.

**Response to Request No. 125**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  To the extent that a response is required, FieldTurf denies the request.

2724614.1

**Request No. 126**

During the meeting between FieldTurf representatives and the end-user concerning the field to be installed at Northeast Regional Park in Polk County, Florida, FieldTurf representatives advised that TenCate fibers should not be used for the project.

**Response to Request No. 126**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  To the extent that a response is required, FieldTurf denies the request.

**Request No. 127**

During the meeting between FieldTurf representatives and the end-user concerning the field to be installed at Northeast Regional Park in Polk County, Florida, FieldTurf representatives represented that TenCate fibers were defective.

**Response to Request No. 127**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  To the extent that a response is required, FieldTurf denies the request.

**Request No. 128**

During the meeting between FieldTurf representatives and the end-user concerning the field to be installed at Northeast Regional Park in Polk County, Florida, FieldTurf representatives represented that TenCate fibers were the cause of the field failures at issue in the Current Litigation.

**Response to Request No. 128**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  To the extent that a response is required, FieldTurf denies the request.

**Request No. 129**

FieldTurf installed a synthetic turf field in Drongen, Belgium for K.V.E. Drongen in November 2010.

**Response to Request No. 129**

Admitted.

47

**Request No. 130**

FieldTurf installed a synthetic turf field in Drongen, Belgium for K.V.E. Drongen utilizing Revolution Turf.

**Response to Request No. 130**

Admitted.

**Request No. 131**

The K.V.E. Drongen field was installed with Revolution Turf prior to termination of the 2008 Supply Agreement.

**Response to Request No. 131**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for a legal conclusion.  To the extent that a response is required, FieldTurf admits that it installed a test field with Revolution turf in Drongen, Belgium in November 2010.

**Request No. 132**

FieldTurf promoted Revolution fibers to representatives of K.V.E. Drongen prior to termination of the 2008 Supply Agreement.

**Response to Request No. 132**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects to this Request on the ground that it calls for a legal conclusion.

**Request No. 133**

Prior to February 9, 2011 FieldTurf replaced a field originally containing Evolution 3GS fiber, with a field made from Revolution fiber.

**Response to Request No. 133**

Denied.

**Request No. 134**

Bates TENCATE0000689-TENCATE0000693 represents a true and accurate copy of an article titled "Hoover's Memorial Stadium to get artificial surface" published on CantonRep.com.

**Response to Request No. 134**

Denied, except that FieldTurf admits that the article appearing on TENCATE 0000689

represents a true and accurate copy of an article titled "Hoover's Memorial Stadium to get

artificial surface" published on CantonRep.com.

**Request No. 135**

FieldTurf installed a synthetic turf field at North Canton Hoover High School in May 2011.

**Response to Request No. 135**

Denied.

**Request No. 136**

FieldTurf installed a synthetic turf field at North Canton Hoover High School in May 2011, using Revolution Turf.

**Response to Request No. 136**

Denied.

**Request No. 137**

FieldTurf promoted Revolution fiber to representatives of North Canton Hoover High School prior to termination of the 2008 Supply Agreement.

**Response to Request No. 137**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf

further objects to this Request on the ground that it calls for a legal conclusion.

**Request No. 138**

The term "Evolution" appeared in FieldTurf's correspondence with, or documents FieldTurf provided to, third parties relating to Duraspine fiber.

2724614.1

**Response to Request No. 138**

       FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects that the Request is improperly designed to suggest that FieldTurf invoked the name "Evolution" in correspondence with third parties relating to Duraspine fiber.  To the extent a response is required, FieldTurf denies the request, including the statement that FieldTurf included the term "Evolution" in documents provided to third parties relating to Duraspine fiber.  FieldTurf admits that in a few instances third parties included the term "Prestige Evolution" in correspondence with FieldTurf relating to Duraspine fiber.

**Request No. 139**

       The term "Evolution" appeared in FieldTurf's correspondence with, or documents FieldTurf provided to, architects in connection with promoting Duraspine fiber.

**Response to Request No. 139**

       FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects that the Request is improperly designed to suggest that FieldTurf invoked the name "Evolution" in correspondence with third parties relating to Duraspine fiber.  To the extent that a response is required, FieldTurf denies the request.

**Request No. 140**

       The term "Evolution" appeared in FieldTurf's correspondence with, or documents FieldTurf provided to, synthetic turf installers in connection with promoting Duraspine fiber.

**Response to Request No. 140**

       FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects that the Request is improperly designed to suggest that FieldTurf invoked the name "Evolution" in correspondence with third parties relating to Duraspine fiber.  To the extent that a response is required, FieldTurf denies the request.

2724614.1

**Request No. 141**

The term "Evolution" appeared in FieldTurf's correspondence with, or documents FieldTurf provided to, end-users in connection with promoting Duraspine fiber.

**Response to Request No. 141**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  FieldTurf further objects that the Request is improperly designed to suggest that FieldTurf invoked the name "Evolution" in correspondence with third parties relating to Duraspine fiber.  To the extent that a response is required, FieldTurf denies the request.

**Request No. 142**

The Revolution mark is used to sell monofilament fibers for use in artificial turf athletic fields.

**Response to Request No. 142**

FieldTurf objects to this Request on the ground that it is vague and ambiguous.  To the extent that a response is required, FieldTurf denies the request except admits that the Revolution mark is used to sell artificial turf athletic fields manufactured with Revolution fiber.

**Request No. 143**

FieldTurf has knowingly used the Evolution mark in its marketing materials for Revolution fiber.

**Response to Request No. 143**

FieldTurf objects to this Request on the ground that it calls for a legal conclusion.  To the extent that a response is required, FieldTurf denies the request.

**Request No. 144**

FieldTurf did not perform any trademark clearance searches prior to its decision to adopt and use the Revolution mark.

**Response to Request No. 144**

Denied.

Dated:          July 16, 2012
                Atlanta, Georgia


                        NATIONS, TOMAN & MCKNIGHT LLP


                        /S/ Gary J. Toman
                        Gary J. Toman
                        Georgia Bar No. 714651
                        1230 Peachtree Street, NE, Suite 2050
                        Atlanta, Georgia 30309
                        (404) 266-2366
                        gtoman@ntmlaw.com

                        -and-

                        FRIEDMAN KAPLAN SEILER &
                            ADELMAN LLP
                        Bruce S. Kaplan
                        Katherine L. Pringle
                        Lindsey R. Skibell
                        Pearline M. Kyi
                        7 Times Square
                        New York, N. Y. 10036
                        (212) 833-1100


                        *Attorneys for Plaintiffs*

52

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
GEORGIA ROME DIVISION

```
-------------------------------------------------------- x
                                                         :
FIELDTURF USA INC., FIELDTURF INC.,                      :
and FIELDTURF TARKETT SAS,                               :
                                                         :
                        Plaintiffs,                      :
                                                         :       CIVIL ACTION FILE
                     - against –                         :
                                                         :       NO.: 4:11-CV-0050 - TWT
TENCATE THIOLON MIDDLE EAST, LLC                         :
f/k/a MATTEX LEISURE INDUSTRIES,                         :
POLYLOOM CORPORATION OF                                  :
AMERICA d/b/a TENCATE GRASS NORTH                        :
AMERICA, and TENCATE THIOLON B.V.,                       :
                                                         :
                        Defendants.                      :
                                                         :
-------------------------------------------------------- x
```

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this 16th day of July, 2012 caused a true and

correct copy of the foregoing Plaintiffs' Objections and Responses to Defendants'

Requests for Admission to be served by e-mail and Federal Express upon:

> James F. Bogan III
> KILPATRICK TOWNSEND
> Suite 2800
> 1100 Peachtree Street
> Atlanta, GA 30309-4528
> (404) 815-6467
> Fax (404) 541-3133
> jbogan@kilpatricktownsend.com

William Cremer
Thomas R. Pender
CREMER, SPINA, SHAUGHNESSY, JANSEN &
SIEGERT, LLC
One North Franklin, 10th Floor
Chicago, Illinois 60606
(312) 726-3800
wcremer@cremerspina.com
tpender@cremerspina.com

*Attorneys for Defendants*

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP


/S/ Lindsey R. Skibell
Lindsey R. Skibell